## SUPREME COURT.

### COLEMAN agt. VAN RENSSELAER.

A *mortgage* of property which contains no covenant or promise to pay the money secured by it, nor any express acknowledgement of indebtedness by the mortgagor, creates no *personal* liability.

It is enough to establish a personal liability against the mortgagor if the mortgage contain an *admission* of indebtedness on his part, then a promise will be implied and a legal liability created.

But all the cases held, however, that to create a personal liability by implication, the admission of indebtedness contained in the instrument must be express and unequivocal. It is only from such an admission that a promise will be implied.

The recital in an ordinary mortgage, " that the party of the first part, in consideration of the sum of five hundred dollars to him duly paid, has granted, bargained, sold, conveyed," &c., is not an admission of indebtedness from which a promise to pay the sum secured would be implied, hence no personal liability against the mortgagor was created thereby.

*Saratoga Special Term, February,* 1873.

POND & FRENCH, *for plaintiff.*
L. B. PIKE, *for defendant, Mrs. Van Rensselaer.*

BOCKES, *J.*—The action is for the foreclosure of a mortgage. The amount claimed to be due and secured thereby is $500, with interest from May 1, 1871. The defendants are Mary F. Van Rensselaer, Jane A. Martyn, John Van Rensselaer, and Horatio N. Squires, all of whom make default except the first-named Mary F. Van Rensselaer. The equity of redemption is in the defendant Jane A. Martyn, who took title subject to the mortgage.

It is conceded that the plaintiff, as the case stands before me, is entitled to have the premises sold and the avails applied on the debt claimed in the complaint. But Mary A. Van Rensselaer defends with a view to escape liability for

such deficiency as shall remain, if any, after due application of the avails of the sale of the mortgaged premises.

The issue before me is one between the plaintiff and Mrs. Van Rensselaer, and does not affect the case as regards the other defendants.

The complaint charges that Mrs. Van Rensselaer covenanted to pay the plaintiff the sum claimed, and mortgaged the premises as security for such payment.

In her answer Mrs. Van Rensselaer denies that she covenanted or promised to pay the debt; sets up that the debt was not her debt, but was the debt of John Van Rensselaer, her husband; the mortgage was given as collateral security therefor; and, further, sets up payment as to part of the debt and an extension of the time of payment, without her consent, of the balance.

The issues thus presented are: 1st, As to Mrs. Van Rensselaer's personal liability; and 2d, as to the payment of part with an extension of payment of the balance.

*First.* Did Mrs. Van Rensselaer covenant to pay the debt? or, in other words, does the mortgage contain a personal obligation on her part to pay the amount secured by it?

The proof shows that the debt was not her debt, but was the debt of her husband, and that the mortgage was upon her individual property as security for his debt. It is insisted, however, that she is bound personally to its payment by the term and legal import of the mortgage.

A mortgage of property which contains no covenant or promise to pay the money secured by it, nor any express acknowledgment of indebtedness by the mortgagor, creates no personal liability (3 *N. Y.*, 264; 41 *N. Y.*, 201, 207, 208, 14 *Barb.*, 242; 13 *Barb.*, 63-73; 15 *Wend.*, 218; 10 *Johns.*, 56-7). These cases contain but the reiteration of the rule laid down in others cited in 3 *N. Y.*, 264; *Cro. Jac.*, 281; 2 *Modern*, 36; 6 *Blackf.*, 161; 7 *Watts*, 360; 2 *Munf.*, 337. The mortgage in this case contains no covenant or promise in terms to pay on the part of Mrs. Van Rensselaer,

but it is enough to establish a personal liability against her if it contain an admission of indebtedness on her part, then a promise will be implied and a legal liability created. All the cases hold, however, that to create a personal liability by implication the admission of indebtedness contained in the instrument must be express and unequivocal. It is only from such an admission that a promise will be implied. The plaintiff's counsel insists that such express admission of indebtedness is found in the case in the statement or recital in the mortgage, "that the party of the first part, in consideration of the sum of five hundred dollars to her duly paid, has granted, bargained, sold, conveyed," &c. But it will be seen that in the early case of *Suffield* agt. *Baskeroil* (2 *Modern*, 36), the instrument sued on contained a similar recital, to wit:. " That the defendant for and in consideration of four hundred pounds, lent him by the plaintiff, granted," &c., yet it was held that the defendant was not personally liable.

In *Howell* agt. *Price* (1 *Piere. Will.*, 292) the mortgage recited a consideration of three hundred pounds, in considering which the lord chancellor said: " There did not appear to be any contract, either express or implied, for the payment of this mortgage money ;" and when the case was subsequently again considered, he added in substance that the remedy of the mortgagee would be against the premises on default of payment. It is true the question of personal liability was not directly up in the case.

In *Salisbury* agt. *Philips* (10 *John.*, 57) the action was on an instrument made real, the recital in which was as follows: " For and in consideration of the sum of twelve pounds to me in hand paid by Abraham Salisbury, I do hereby assign over to him and his assigns forever all the estate," &c. It was held that there was no personal liability. I understand, too, although it is not expressly so stated, that there was a similar recital in the instrument considered by the chancellor in *Hone* agt. *Fisher* (2 *Barb. Ch.* 560), wherein he held in

accordance with the above cases, and cites 1 *R. S.*, 738, § 139, which provides that no mortgage shall be construed as implying a covenant for the payment of the sum intended to be secured, and that when there shall be no express covenant for such payment contained in the mortgage, and no bond or other separate instrument to secure such payment shall have been given, the remedies of the mortgagee shall be confined to the lands mentioned in the mortgage.

In *Vrooman* agt. *Dunlap* (30 *Barb.*, 202), the mortgagor was sought to be personally charged with the deficiency after sale of the mortgaged premises. There was no bond or separate personal obligation given to or accompanying the mortgage. It was held that there was no personal liability of the mortgagor. I infer the mortgage was in the usual form as regards the recital of a consideration. Here, too, the mortgage was given as security on the purchase by the defendant of the mortgaged premises.

In *Severance* agt. *Griffith* (2 *Lansing*, 38) the mortgage was not accompanied by any bond or personal security; and, as may be fairly assumed, was in the usual form as regards the recital of a consideration. The court remarked that the mortgagee had no remedy against the mortgagors personally; that the remedies he had were against the lands mortgaged.

In *Weed* agt. *Covill* (14 *Barb.*, 242) the action was on a chattel mortgage, which recited that for the consideration of one dollar, and to secure the payment of one hundred and ten dollars, it granted, &c. The question arose on demurrer to the complaint. It was held that there was no personal liability, not even for the one dollar. The court, per HAND, J., says there was no recital or declaration in the instrument that the defendant was personally indebted to the plaintiff, therefore no implied covenant to pay anything. It is merely a mortgage without personal liability.

In *Culver* agt. *Sisson* (3 *N. Y.*, 264), two of the cases above particularly considered are cited with approval, to

wit: *Suffield* agt. *Baskeroil,* and *Salisbury* agt. *Philips,* in each of which the instrument sued on contained a recital similar to that relied on in this case to establish a personal liability.

And in the very recent case of *Turk* agt. *Ridge* (41 *N. Y.,* 201–207), those cases again receive the approval of the court of appeals, as does also *Weed* agt. *Covill* (14 *Barb.,* 242).

It seems settled on authority, therefore, beyond peradventure, that a recital in a mortgage like that contained in the mortgage in this case was not an admission of indebtedness, from which a promise to pay the sum secured would be implied; hence that no personal liability against the mortgagor was created thereby.

In many of the cases cited, too, the debt secured by the mortgage was the debt of a mortgagor. Not so in this case. Here the debt, to secure which the motgage was given, was the debt of another party.

I should not have deemed it necessary to examine these cases thus minutely, were it not that I am cited to the case of *Chase* agt. *Ewing* (51 *Barb.,* 597) as an authority, to the effect that the recital as to the consideration in the mortgage in this case, was such an admission of indebtedness as created a personal liability against the mortgagor. Now, Judge JOHNSON was here examining the question whether the mortgage was an evidence of indebtedness, with a view to determine whether it passed under the clause of a will disposing of choses in action thus denominated. The mortgage was undoubtedly an evidence of indebtedness. So is the mortgage in this case. In law it falls under that denomination. As Judge JOHNSON says: "That it is an evidence of indebtedness, seems too clear for argument."

Every mortgage, whether it contain a personal liability clause or not, is an "evidence of indebtedness;" is a chose in action. It gives a right of action in case of default in the condition; to be enforced, however, against the property mortgaged only in case of the absence of personal liability.

In *Howell* agt. *Price* (*supra*), where the lord chancellor said there was no personal liability, it was further remarked that the three hundred pound mortgage money was a debt; "a debt of a special nature, and for which there was a particular remedy," alluding to the remedy against the premises (*see also Rice* agt. *Rice*, 4 *Pick.*, 349).

Now, all that was decided in *Chase* agt. *Ewing*, was that the mortgage came within the denomination of "evidence of debt," as that language was employed in the clause of the will there under examination.

It was not there decided that the usual recital in a mortgage, as to consideration, which is generally inserted to uphold the grant which follows it, was an admission of indebtedness, creating a personal liability against the mortgagor. If the case did so hold, the decision would be flatly in conflict with the cases above cited, and manifestly unsound. The cases above examined, both in the English and American courts, including those in the court of last resort in our own state, where these cases have received direct and unmistakable sanction, are flatly against such ruling. But the case, as I conceive, does not go the length claimed, and the recital urged upon my consideration and above examined, does not impart an admission of indebtedness creating personal liability.

Nor is there any other recital or statement in the mortgage amounting to such an admission. Stress is placed on the condition in regard to the payment. It is, however, the usual condition in form. The language is, "this grant is intended as security for the payment of five hundred dollars and interest," &c. The condition is very much the same as in the mortgage under examination in *Severance* agt. *Griffith* (2 *Lans.*, 38), and does not differ materially from those contained in other mortgages in the cases above examined.

It is further stated that a policy of insurance was assigned also as security; but this is nothing more than a pledge in addition to the land, even if it be conceded that the policy

was one issued to the mortgagor. It is of no more significance, certainly, than was the covenant of warranty to defend the title to the property in the case of *Weed* agt. *Covill* (*supra*). Then there is the usual clause in regard to the possibility of a surplus after sale providing that such surplus, if any, shall be paid to the mortgagor. This is no admission of indebtedness, and who but the mortgagor should have this surplus if any there should be ? I am entirely satisfied that the mortgagor is not personally liable on this mortgage, and the relief demanded of a personal judgment against the mortgagor must be denied.

*Second.* The conclusion at which I have arrived on the point above considered renders the examination of the remaining issue, as to payment of part of the debt and an extension of the time of payment of the balance without the mortgagor's consent, wholly unnecessary. Mrs. Van Rensselaer, having parted with the equity of redemption, has no interest in the controversy except to escape personal liability.

If, however, the testimony of Mr. Van Rensselaer be credited, the defense on this issue is established. Where a wife mortgages her separate property as security for her husband's debt, her position is that of surety, in which case, if there be an extension of the time of payment without his consent, the mortgage is discharged (*Bank of Albion* agt. *Burns* (46 N. Y., 170). But an examination of this branch of the case is unnecessary.

The plaintiff is entitled to the reversal of the judgment of foreclosure and sale of the mortgaged premises, none of the defendants having answered except Mrs. Van Rensselaer, who, as is proven, had conveyed the equity of redemption to the defendant Martyn.

The plaintiff, too, should have costs, as in case of failure to answer, except as against Mrs. Van Rensselaer, who is entitled to costs of the action on her part against the plaintiffs.